# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED PRESS INT'L, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:18-cv-00910** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **GLOBAL ONE NEWS, INC., et al.,** | ) | **MAGISTRATE JUDGE NEWBERN** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's Motion for Default Judgment (Doc. No. 22) and Memorandum in Support (Doc. No. 23). Defendants have not responded.

The Court has considered the allegations in the Complaint and finds that they state a claim for relief. For the reasons stated below, the Plaintiff's Motion for Default Judgment is **GRANTED**.

## I.     FACTUAL ALLEGATIONS

Plaintiff United Press International, Inc. ("UPI") is a Delaware corporation with its principle place of business in Florida. (Doc. No. 1 ¶ 2). UPI is an international news agency providing information through various mediums using the trademarks "UPI" and "UNITED PRESS INTERNATIONAL." ("the UPI marks"). (*Id.* ¶¶ 9, 11-13). The UPI marks are registered trademarks with the U.S. Patent and Trademark Office. (*Id.* ¶¶ 17-20).

Defendant Global One News, Inc. ("Global One"), which formerly operated under the name "United News International" and "UNI", is a Delaware corporation with its principle place of business in Tennessee. (*Id.* at ¶¶ 3, 26). Global One provides "news-related services, including online production of articles and videos." (*Id.* ¶24). Defendant Stanley W. Fields ("Fields") is the

founder and former chief executive officer of Global One. (*Id*. at ¶ 4). Defendant Kurt Thomet ("Thomet") was chief executive officer of Global One at the time of the filing of the Complaint. (*Id*.) Fields and Thomet authorized and directed Global One in the acts complained of. (*Id*.)

In September 2018, Plaintiff filed the instant action alleging claims of trademark infringement, unfair competition, false designation of origin, and violations of the Tennessee Consumer Protection Act. (Doc. No. 1). Defendants have been served and are aware of this action. (Doc. Nos. 12, 13, 14). Defendants have not answered the Complaint or made any other filings in this case. The Clerk of Court entered default. (Doc. No. 19). Thereafter, Plaintiff moved for default judgment on Count I, trademark infringement, and dismissed all other claims without prejudice. (Doc. No. 23).

## II.     STANDARD OF REVIEW

Federal Rule 55(b) governs the entry of default judgment. A plaintiff must have first secured an entry of default from the Clerk of Court, which requires a showing, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend" itself in the action. Fed. R. Civ. P. 55(a). Upon entry of default, if a plaintiff's claim is not for a sum certain, he or she "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

Once default has been entered, the defaulting party is deemed to have admitted all of the well pleaded factual allegations in the complaint concerning liability. *Zinganything, LLC v. Imp. Store,* 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation— other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). "When an application is made to the court under Rule 55(b)(2) for the entry of judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Charles Alan Wright,

2

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2685 (3d ed. 1998). "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right." *Id*. The court should deny a motion for default judgment if the complaint fails to state a claim upon which relief can be granted. *Bailey v. Harrison*, 107 F.3d 870 (6th Cir. 1997). In determining whether to enter a default judgment, courts typically consider factors such as:

> The amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or are in doubt; how harsh the effect of a default judgment may be; whether the default was caused by a good-faith mistake or excusable neglect; and whether the plaintiff has engaged in a course of delay.

10A Wright et al. at § 2685. However, the court must still determine whether those facts are sufficient to state a claim for relief with respect to each of the plaintiff's theories of liability. *Zinganything, LLC*, 158 F. Supp. 3d at 670.

## III. ANALYSIS

### A. Trademark Infringement

To establish liability for trademark infringement under 15 U.S.C. § 1114(a), a party must show that: (1) it owns a trademark; (2) the infringer used the mark in commerce without authorization; and (3) the use of the alleged infringing mark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (citations omitted). The party "must show that the defendant's use of its marks constitutes use 'in commerce' of a 'reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause

3

confusion, or to cause mistake, or to deceive.'" *The Row, Inc. v. Rooke, LLC*, No. 18-5068, 2018 WL 7107543, at *2 (6th Cir. Sept. 20, 2018) (citing 15 U.S.C. § 1114(1)).

UPI has satisfied element one by providing evidence that it owns the registered trademarks UNI and UNITED NEWS INTERNATIONAL. (*See* Doc. Nos. 1-2, 1-3, 1-4). Plaintiff has also stated that Defendant used the alleged infringing mark in commerce, thereby satisfying the second element. (*See* Doc. No. 1, ¶¶ 24-39 (providing copies of various UNI online publications bearing the marks UNI and UNITED NEWS INTERNATIONAL)). The third element, likelihood of confusion, is the essence of the claim for trademark infringement. *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006).

To determine the likelihood of confusion, the Sixth Circuit uses an eight-factor test. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007). These factors are: (1) the strength of plaintiff's mark; (2) the relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the intent of Defendant in selecting the mark; and (8) the expansion of the product lines. *Id.* "Not all of these factors will be relevant in every case, and the ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *The Row*, 2018 WL 7107543 at *2 (internal quotation marks omitted) (citing *Homeowners Grp. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100 (6th Cir. 1991)).

1. Strength of the Mark

"Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark is valid, that is, either inherently distinctive or descriptive with secondary meaning, and therefore, protectable under federal trademark law." *Leelanau Wine*, 502 F.3d at 513. (citing 15 U.S.C. § 1115(a)). In this case, the UPI and UNITED PRESS

INTERNATIONAL marks have been registered with the USPTO since 1960 and 2008, respectively. (Doc. Nos. 1-2, 1-3, 1-4). The registration of the marks supports a finding in favor of UPI.

2. Relatedness of the Goods

"Services and goods are 'related' not because they coexist in the same broad industry, but are 'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marketed, come from the same source, or are somehow connected with or sponsored by a common company." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 282-83 (6th Cir. 1997) (internal quotations omitted). "If the parties compete directly, confusion is likely if the marks are sufficiently similar." *The Row*, 2018 WL 7107543, at *3 (quoting *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003)). Here, UPI and Global One offer virtually the same service (news) through the same platform (online). The Court finds that relatedness of the goods here supports a likelihood of confusion.

3. Similarity of the Marks

Similarity of the marks is a factor afforded "considerable weight." *Daddy's Junky Music*, 109 F.3d at 283. In evaluating this factor, the court considers whether "the appearance of the two marks is similar enough that it would confuse customers who do not have both marks before them but who may have a general vague, or even hazy, impression or recollection of the other party's mark." *Wynn Oil Co. v. American Way Svc. Corp.*, 943 F.2d 595, 601 (6th Cir. 1991) ("*Wynn Oil II*") (internal quotations and citations omitted). "[C]ourts must view marks in their entirety and focus on their overall impression, not individual features." *Daddy's Junky Music*, 109 F.3d at 283. Such consideration should include "the pronunciation, appearance, and verbal translation of the conflicting marks" *Id*.

5

Here, the UPI marks differ from UNI by one letter, and the full names of each, United Press International and United News International, differ by one word which are synonymous with one another, "Press" and "News."  A consumer presented with only one mark and having only "a general, vague, or even hazy, impression or recollection of the other party's mark" might confuse one with the other. *Id*. (quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988)("*Wynn Oil I*")).

    4. <u>Evidence of Actual Confusion</u>

 The plaintiff has not presented any evidence of actual confusion in this case. Courts have, however, afforded this factor less weight when no evidence is presented. *See Wynn Oil II* 943 F.2d at 601. (citing *Wynn Oil I*, 839 F.2d at 1188 (finding "this factor is weighed heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available.")).  Although Plaintiff has not presented evidence of actual confusion, there is no indication that under the circumstances of this case such evidence should have been readily available.  Accordingly, the Court affords this factor little weight.

    5. <u>Marketing Channels Used</u>

In evaluating the marketing channels used, the court considers "the similarities or differences between the predominant customers of the parties' respective goods or services" and "whether the marking approaches employed by each party resemble each other." *Daddy's Junky Music*, 109 F.3d at 285.  Here, the parties share marketing channels and target audiences. Both parties market their products primarily online through the internet and social media outlets to mass consumer groups seeking online news sources.  This factor, therefore, suggests a likelihood of confusion among consumers.

6. <u>Likely Degree of Purchaser Care</u>

 "In assessing the degree of purchaser care, courts typically use a 'typical buyer exercising ordinary caution' standard." *The Row*, 2018 WL 7107543, at *4 (citing *Leelanau Wine,* 502 F.3d at 519)).  "In general, the less care that a purchaser is likely to take in comparing products, the greater the likelihood of confusion." *Wynn Oil II* 943 F.2d at 602.  Plaintiff contends the degree of care of consumers browsing free news services on the internet is low. (Doc. No. 23, PageID# 102).  The Court agrees.  Given the likely low degree of purchaser care, this factor supports a finding of likelihood of confusion.

7. <u>Intent of Defendant in Selecting the Mark</u>

 Intentional infringement is not a necessary to find a likelihood a confusion, but it strengthens the claim. *Wynn Oil I*, 839 F.2d at 1189. As no discovery has taken place in this action, there has been no proof as to the intent of Defendants in their selection of their marks. "Intent is an issue whose resolution may benefit only the cause of senior user, not of an alleged infringer." *Leelanau Wine,* 502 F.3d at 520 (quoting *Daddy's Junky Music*, 109 F.3d at 287).   The Court, therefore, regards this factor as neutral.

8. <u>Expansion of the Product Lines</u>

 The final factor for consideration is the possibility that either party will expand his business to compete with the other or be marketed to the same consumers. *The Row*, 2018 WL 7107543, at *5.  As stated above, UNI and Global One already compete in the online market as news-distribution services.  Thus, this factor weighs in favor of UPI. *See id.* (expansion of product lines factor weighed in favor of infringement when businesses were already in direct competition).

 Taken together, these factors weigh principally in favor of a finding of a likelihood of confusion between the marks UPI/United Press International and UNI/United News International.

7

For the reasons stated, the Plaintiff has established the elements of a claim for trademark infringement and is entitled to default judgment on this claim.

**B. Permanent Injunction**

Plaintiff requests the Court permanently enjoin Defendants from infringing the UPI marks and have submitted a proposed order detailing the relief requested.

The Lanham Act provides that a court may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office" or to prevent the violation of any common law trademark rights. 15 U.S.C. § 1116(a).

In determining whether a permanent injunction is appropriate, courts consider whether (1) the plaintiff will suffer an irreparable injury absent an injunction; (2) legal remedies, such as money damages, provide inadequate compensation; (3) the balance of hardships warrant an injunction; and (4) the public interest would not be disserved by an injunction. *Lucky's Detroit, LLC v. Double L., Inc*., 533 F. App'x 553, 555 (6th Cir. 2013).

The Court finds that Defendants continued infringement on Plaintiff's marks will result in irreparable injury that cannot be adequately remedied by money damages and that an injunction will serve the public interest. Moreover, on balance, the equities favor an injunction. *See Audi AG v. D'Amato*, 469 F.3dd 534, 550 (6th Cir. 2006) ("[An infringer] faces no hardship in refraining from willful trademark infringement."). Accordingly, the Court finds a permanent injunction is appropriate in this case.

Turning to the terms of the requested injunction, Plaintiff proposes the injunction apply to Defendants Global One f/k/a United News International, Stanley W. Fields, and Kurt M. Thomet and "all those in active concert or participation with Defendants." Plaintiff requests the Court

8

order that "any person or entity in active concert or participation with Defendants and with notice of the injunction, including internet search engines, web hosting and Internet service providers, domain name registrars, domain name registries, email service providers, social media network operators (including but not limited to Facebook, Twitter, and YouTube), and payment processors, cease facilitating access to any or all domain names, websites, accounts, content, and services through which Defendants engage in unlawful use of the aforementioned marks."

Fed. R. Civ. P. 65(d)(2) addresses who may be bound by an injunction:

> (2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
> (A) the parties;
> (B) the parties' officers agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Plaintiffs have not demonstrated that anyone outside of the Defendants – and their officers, agents, servants, employees, or attorneys – are "in active concert or participation" with Defendants and the Court declines to enter an injunction that directly affects the rights of third parties. Accordingly, the Court will limit the terms of the injunction to the Defendants named in this case.

In addition, Plaintiff's proposed order seeks to enjoin Defendants from "using any copy or colorable imitation of a mark registered to Plaintiff UPI with the United States Patent and Trademark Office, [] including but not limited to the marks UNI and UNITED NEWS INTERNATIONAL." The claims for trademark infringement considered by the Court were only with regard to the marks UNI and UNITED NEWS INTERNATIONAL. Plaintiff has not raised issues regarding infringement of any other marks. The injunction will be limited to the marks considered in this case.

9

## III. CONCLUSION

For the reasons stated above, Plaintiff is entitled to default judgment on its claim for trademark infringement. The motion for default judgment is, therefore, **GRANTED** and judgement will enter for Plaintiff on this claim. The Court will enter an Order enter an Order enjoining Defendants from infringing Plaintiff's marks. In addition, pursuant to Plaintiff's request, all remaining claims are **DISMISSED** without prejudice.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE